NAHUM WASHBURN *vs.* CHRISTOPHER D. COPELAND.

Plymouth.   Oct. 20. — Nov. 2, 1874.   AMES & MORTON, JJ., absent.

A. agreed with B. by an instrument under seal that B. should have the right of unobstructed passage over all that part of A.'s land south of a line ranging with the side of A.'s house then standing upon the land, reserving to A. "the right to eight feet in width on the southerly side of said house for the purpose of enlarging the same or of building a new one." A. built a new house on the site of the former one, covering by its greater width a portion of the land on the south side reserved for that purpose, and then built a fence ranging with the south side of the new house and extending from the house to the highway. *Held*, that A.'s grant of unobstructed passage over the specified portion of his land was absolute, and that his reservation applied only to the erection of a house, and not of a fence upon the land over which the right of way was granted.

TORT for obstructing a right of way by a fence. The case was submitted to the Superior Court, and, on appeal, to this court, on a statement of facts in substance as follows:

In 1852, the plaintiff was the owner of a lot of land in Bridgewater, in the rear of a lot of land owned by the Trinitarian Congregational Church. On the church lot a church was built in 1836, the front line of which was fifty-nine and a half feet from the highway, and there was a space between the southerly line of the church and the adjoining lot owned by Daniel Mitchell, where the persons attending church had been accustomed to hitch their horses, and over which the plaintiff and his tenants passed and repassed. The horse sheds on the church lot in 1852 were in the rear of the church, and extended to the westerly line of the lot, and from the north side to within the length of an ordinary pair of bars of the southerly line of said lot.

On October 30, 1852, the plaintiff and the church society executed an agreement under seal, the material portions of which are as follows:

" The said Nahum Washburn hereby grants and conveys to said Trinitarian Congregational Church, their successors and assigns, the right and privilege of occupying and improving, by placing and keeping horse sheds thereon, and allowing horses and carriages to stand upon the same, a piece of land adjoining the land now owned by said corporation, fifty-two feet in length, and eighteen feet in width at the northerly end, and seventeen feet in width at the southerly end, the southerly end of said piece of land being on a line ranging with the southerly side of the meeting-house of said corporation, and extending northerly fifty-two feet in the line of their land. And said Washburn hereby agrees that said corporation may erect and keep posts within two feet of the southerly line of their land adjoining the land of Daniel Mitchell, and allow horses, with or without carriages attached, to be hitched thereto at all times. Provided that there shall always be a sufficient unobstructed passage way from his land to the highway on the southerly side of their meeting-house."

" And the said Trinitarian Congregational Church in Bridgewater, in their corporate capacity, in consideration aforesaid, do hereby covenant and agree with said Washburn that they will remove so much of the horse sheds, now standing on their land the back side of their meeting-house, as are southerly of a line ranging with the southerly side of said meeting-house, and will keep the land which lies southerly of said meeting-house and a line ranging with the southerly side of said house from the highway to said Washburn's land, and owned by said corporation, free from all obstructions, excepting the right of erecting posts and permitting horses and carriages to stand thereon as aforesaid, and reserving the right to eight feet in width on the southerly side of said meeting-house for the purpose of enlarging the same or of building a new one."

Shortly after the agreement was made, the horse sheds were moved on to the plaintiff's land, as agreed. In 1861 a new church was built, occupying in part the ground on which the old church had stood, and the southerly line of the building was five feet and six inches nearer Mitchell's land than the southerly line

of the old church, and extended about eight feet further westerly. This was done with the knowledge of the plaintiff and without his objecting thereto. In 1873, the defendant, acting in behalf of the church, built the fence complained of, from the southeasterly corner of the new church to the highway, in continuation of the southerly line of the church.

"There remains between the fence and the southerly line of the church lot and between the southerly line of the present church and said southerly line of the church lot, the space of twenty-five feet and four inches, which is a sufficient passage way. If judgment is entered for the plaintiff it shall be for nominal damages."

On these facts the Superior Court ordered judgment for the defendant, and the plaintiff appealed.

*H. Kingman,* for the plaintiff.

*P. E. Tucker,* for the defendant. The object of the agreement of October 30, 1852, was twofold; to enable the church to occupy a portion of the plaintiff's land for its horse sheds, and to grant a way to the plaintiff, easterly from his rear lot to the highway, or to fix and define its limits. In settling the latter point, it was the intent of the agreement to give the plaintiff the right to use all the land between the meeting-house and a line ranging with its southerly line as it then stood, and the hitching posts near the southerly fence, until a new meeting-house should be built or the old one enlarged, and then to give for a way all the land between the southerly line of the new or enlarged meeting-house, and its extension east and west, and said hitching posts; and eight feet southerly from the south line of the meeting-house as it then stood, and from its extension east and west, were reserved for such erection or enlargement. The construction contended for by the plaintiff would be onerous upon the church, as depriving it of the right to build or extend southerly, except upon the depth from front to rear of the church as it then stood; and useless to the plaintiff, as the eight feet in the front or rear of the new or extended meeting-house would be of no practical advantage to him as a way, since he had no right of way at all across the church lot, either in the front or rear of the church. A construction, harsh to one party and valueless to the other, should not be given to this instrument unless imperatively

demanded by its language. The construction contended for by the defendant is that in effect given by the parties to the agreement at the time the new meeting-house was built. As the church had a right to extend its new building on its new southerly line to the front or rear, as seems to have been then assumed and admitted, and did extend it further westerly, without objection, it had a right, on the principle that the greater covers the less, to erect a fence on the extension of said line. A fence connecting the building with the street is a convenient and reasonable appendage to the building, to prevent or protect approach to it from the street, and a part of it, within the meaning of this agreement.

WELLS, J. The agreement of the society, under which the defendant justifies, to " keep the land which lies southerly of said meeting-house and a line ranging with the southerly side of said house, from the highway to said Washburn's land," " free from all obstructions," with the exceptions named in the agreement, is absolute and not to be limited by or construed with reference to the necessities of any supposed purpose or use for which the space was to be kept open. The line thus defined is fixed by the location of the house as it stood at that time. The reservation or exception of " the right to eight feet in width on the southerly side of said meeting-house for the purpose of enlarging the same or of building a new one," must be measured and limited by the purpose so declared.

The defendant contends that this reservation or exception is of eight feet in width, not only " on the southerly side of said meeting-house," as far as it should extend when enlarged or rebuilt, but along the whole line described in the agreement; and that when the new building was erected the stipulations of the agreement applied to " a line ranging with the southerly side of said " new meeting-house. There may be no reason why the plaintiff should require or the society concede a wider space between the building and the highway than there was left on the southerly side of the building. It is enough that such is the stipulation of the agreement. The line in question was established, as appears from the agreement, not merely to define an open passage way, but to determine the southern limit of the right granted to the society to erect horse sheds upon the plaintiff's land, and also

that to which the sheds already upon the land of the society were to be removed. Construing the reservation or exception in view of this feature of the agreement, the words setting forth the purpose become more significant that no change of the line was intended beyond that required for that purpose.

The fence complained of was erected within the space so agreed to be kept open; and, according to the agreement of the parties, the plaintiff is entitled to judgment for nominal damages.

*Judqment for the plaintiff.*